Warren *v.* Warren.

---

GEORGE WARREN & *al.*, *in Eq.*, *versus* JOHN G. WARREN & *al.*, *Ex'rs.*

Equity forbids the joining in one bill of entirely distinct matters of complaint having no connection with each other; or the introduction of parties who are not interested in the subject matters or decree sought, and have but an incidental interest in some question raised by the allegations in the bill.

It is impracticable to lay down any general rule as to what constitutes multifariousness as an abstract proposition; but each case must depend upon its own circumstances, and much must necessarily be left to the sound discretion of the Court.

A bill, filed January, 1867, set out a co-partnership between two in the business of lumbering, farming, trade and navigation, from 1815 to 1845, when, one of the co-partners having died intestate, the plaintiffs, being the sole heirs of the deceased member, were admitted into the firm by the surviving partner, whereupon the partnership business continued until 1862; that, in 1844, another person was admitted into a particular branch of the partnership business, which continued till 1854, when he sold out, received from the co-partnership his share of the profits and accounted for his share of the property, and, at the same time, the plaintiffs purchased the other partner's interest in this branch of the business; that the general business of the co-partnership continued until 1862, when the original surviving partner died testate, and the defendants were appointed executors of his will;

that the plaintiffs claimed an account of all partnership transactions from 1845 to 1862, as well as those prior to 1845. On demurrer, — *Held,*

1. That the bill was not multifarious;

2. That the new partner, in the particular branch of the partnership business, need not be made a party;

3. That the bill was brought by the proper plaintiffs, they suing as partners, and not simply as heirs; and,

4. That, the bill having been filed within six years after the final dissolution, the cause of complaint is not necessarily barred by the statute of limitations.

BILL IN EQUITY, heard on demurrer, brought in the name of George Warren and Lewis P. Warren, of Westbrook, who were the sole heirs at law of the late John Warren, against . John G. Warren and Charles W. Scott, executors and trustees of the last will and testament of the late Nathaniel Warren.

The bill alleges substantially that, . in 1815, John and Nathaniel Warren entered into a co-partnership in the business of lumbering, farming, trade and navigation, under the firm name of J. & N. Warren, each uniting his property, real and personal, and they were in all things to share equally in their partnership affairs ; that their partnership business continued till Sept. 10, 1845, when John Warren died intestate, leaving the complainants his sole heirs and representatives, and that, upon his decease, all his property, together with his interests in said partnership business, vested in them ; that, during John Warren's lifetime, he advanced to the partnership more than his proportionate part of the funds and performed more than his share of the services therein ; that, at John Warren's decease, Nathaniel Warren had received the larger share of the partnership profits, and was indebted to John Warren therefor and for the surplus advances aforesaid ; that the partnership thus. continued without any adjustment, until Feb. 11, 1824, when Nathaniel Warren was found indebted to the co-partnership in a certain sum named ; that, from Feb. 11, 1824, to the time of John Warren's death, there was no settlement or exhibit of the condition of the partnership affairs, although Nathan-

iel Warren kept the partnership books and papers and was thereto often requested by John Warren, and that no account thereof has been rendered by Nathaniel Warren or his representatives, to the date of this bill; that, prior to the death of John Warren, the co-partnership acquired certain real estate, a part of which was thereafter divided, but a certain part thereof remained undivided at the decease of John Warren, which, together with a large amount of personal property, rights and credits, was continued in the partnership business; that no administration of John Warren's estate has ever been granted to any person; that the complainants became entitled to all the rights and remedies in equity to which their father in his lifetime was entitled.

The bill further alleges that, on August 11, 1844, one Walker united his business of lumbering to that of J. & N. Warren, and that the lumbering business was carried on by J. Warren, N. Warren and Walker, the said J. & N. Warren having one-fourth part interest each, and Walker one-half part interest therein; that, in all other respects, the partnership business of J. & N. Warren was conducted same as before Walker's connection therewith; that said lumbering business was carried on by the firm name of Warren & Walker, separate and distinct from the other partnership business; that, after the death of their father, the complainants succeeded to his partnership interests, all of which remained in the hands of Nathaniel Warren, and it vested in them; that, thus representing their father's interests, the complainants were admitted by Nathaniel Warren into the partnership before stated; that the co-partnership business, so far as the lumbering was concerned, was carried on by Nathaniel Warren, owning one-fourth, Walker one-half, and the complainants, owning and representing in the right of their deceased father, the remaining fourth part interest in the same; that the several parties in the lumbering business were each to contribute their respective proportion of services and property and receive a pro-

portionate share of the profits; that the former partnership business of J. & N. Warren was continued after John Warren's death by Nathaniel Warren and the complainants, owning and representing the moiety of their father deceased, and they so continued in said business till Nov. 1862; that, after the decease of John Warren, Nathaniel Warren received more than his share of its proceeds and the complainants contributed more than their share to the business.

The bill further alleges that the lumbering business was continued by Nathaniel Warren, Walker and the complainants until July, 1854, when Walker sold his interest to one Brigham, and received his share of the profits, and fully accounted for his share of the property; that, in July aforesaid, the complainants purchased Nathaniel Warren's interest in the lumbering interest; that Nathaniel Warren then held a large amount of property, rights and credits received from John Warren and never accounted for, and a large amount of interest and profits which arose from the funds of the co-partnership of J. & N. Warren, in the hands of N. Warren, before and after John Warren's death; that Nathaniel Warren, so holding the funds of J. Warren, in his lifetime, and, since his death, of the complainants, which he ought to have accounted for to the complainants, the complainants, at Nathaniel Warren's request, made their promissory note, dated July 1, 1854, and payable to Nathaniel Warren, for the sum of $8920; that said note was given for convenience, with the full understanding with Nathaniel Warren that whatever sum of money or other property Nathaniel Warren held as due John Warren in his lifetime, or, since his death, to the complainants, should be applied to the payment of said note, and that the amount so held was more than the value of the note.

The bill further alleges that the partnership business, other than the lumbering business, was continued by Nathaniel Warren and the complainants, till November, 1862, when Nathaniel Warren died testate, and the defendants were appointed executors of his will, duly probated, and trustees

of certain trusts therein named, which they accepted; that, in Nov., 1866, the defendants, as executors, disregarding the understanding before named and contriving to oppress the complainants, sued said note and entered their action at the January term, 1867, of this Court, where the same is now pending.

The bill further alleges that, during the partnership of J. & N. Warren, both before and since the death of John Warren, Nathaniel Warren applied to his own use, from the profits of said co-partnership, large sums of money exceeding his proportion, and, up to the time of his death, Nathaniel Warren has had charge of the partnership books of account between himself and John Warren and between himself and the complainants; that the complainants have had no means to ascertain the true state of their accounts; that the complainants repeatedly applied to Nathaniel Warren in his lifetime, and, since his death, to the defendants, for an account of all the affairs of the co-partnership between Nathaniel & John Warren, in his lifetime, and, since his death, between Nathaniel Warren and the complainants; that Nathaniel Warren, in his lifetime, refused and neglected to answer said account to John Warren or the complainants, as have the defendants since the death of Nathaniel Warren; that the defendants pretend that nothing is due the complainants; that Nathaniel Warren received $5000 more than his proportion of the partnership profits; that the defendants ought to apply said moneys to the payment of said note and be enjoined from prosecuting their suit thereon, and render a true account of the partnership transactions.

The prayer of the bill was for an answer and for an account of all the partnership dealings, and the defendants be decreed to apply whatever is found due the complainants to the payment of said note, and the balance to the complainants, offering to pay whatever may be found due from John Warren or the complainants; that, in the meantime, the

defendants be restrained from prosecuting their suit on the note, and for further relief.

The defendants demurred, assigning the following causes:

1. That the claims and transactions set out in the bill occurred more than six years before the filing of the bill;

2. That the plaintiffs, as heirs of John Warren, have no right to maintain the bill or to any relief touching the same;

3. That, as to so much of the bill as seeks an answer touching real estate acquired by the co-partnership prior to the death of John Warren, the plaintiffs have not made such a case in reference thereto as entitles them to any discovery or relief;

4. That as to so much of the bill as seeks an answer touching the alleged admission of the plaintiffs into the co-partnership after the death of John Warren, the continuance of the co-partnership thereafterwards, &c., the plaintiffs have not made such a case as entitles them to any discovery or relief; and,

5. That the bill is exhibited for several separate and distinct claims and causes which have no relation to or dependance on each other, and concern different and distinct persons who have no common relation to or interest in the same; because the bill is multifarious, and because it discloses no equity on the part of the plaintiffs, nor any right to the assistance of a court of equity.

*Shepley & Strout*, for the plaintiffs.

*J. & E. M. Rand*, for the defendants.

1. John Warren and Nathaniel Warren were partners from 1815 to 1845; John Warren died, and plaintiffs, as heirs, bring this bill for an account.

2. August, 1844, John Warren, Nathaniel Warren and Walker formed a co-partnership (in the " lumbering business,") which was dissolved by the death of John Warren in Sept., 1845.

3. September, 1845, the plaintiffs, " as heirs of John

Warren," (as alleged,) came into the original firm. In law a new co-partnership was formed, consisting of Nathaniel Warren and the plaintiffs, which continued till November, 1862, when Nathaniel Warren died.

. 4. The "lumbering" firm of the Warrens and Walker having been dissolved by the death of J. Warren, and the business having been continued, a new firm, in law, was formed consisting of Nathaniel Warren and Walker, which continued till July, 1854, when it was dissolved by each member selling out to others, Nathaniel to the plaintiffs. ·

The bill calls for an account of all the partnership transactions of four separate and independent firms, — in two of which the plaintiffs claim an interest as heirs, in one, in their own right, as partners, and, in the other no interest whatever.

The plaintiffs, as heirs, cannot maintain a bill for an account, touching personal property, moneys, and choses in action, — it can be done only by an administrator or executor.

All the transactions, claims and causes of action, (except those of one of the firms for a short period,) occurred and accrued more than six years before the filing of the bill.

The real estate of John Warren descended to his heirs, and is not a subject matter for such a bill.

Walker, a member of two of the firms, should have been made a party. Story's Eq. Pl., §§ 75, 236.

· The bill is multifarious in embracing several distinct and independent matters. Story's Eq. Pl., § 530. Counsel also cited Story's Eq. Pl., §§ 219, 236, 444, 484, 530; 1 Daniell's Ch. Pl., 384 and notes.

KENT, J. — The principal ground, set forth in the demurrer to this bill, is that it is multifarious. Before examining the allegations in the bill, it is important to ascertain what is the true definition of multifariousness as applied to a bill in equity, and its extent and limitations. Equity, whilst it is broad and liberal in the application of remedies,

and avoids the strict technicalities of the common law, yet forbids the mixing together in one bill of entirely distinct and independent matters of complaint, or the introduction of parties who are not interested in the subject matter or decree sought, and have but an incidental interest in some question raised by the statements in the bill. The objection, therefore, is of a two fold character, one relating to the subject matter and prayer of the bill, and the other relating to the parties thereto. But "a bill is not multifarious because it joins two good causes of complaint, growing out of the same transaction, when all the defendants are interested in the same claim of right, and when the relief asked for in relation to each is of the same general character." *Foss* v. *Haynes*, 31 Maine, 81; Story's Eq. Pl., § 284.

Where the object of the bill is single, to establish and obtain relief for one claim, in which all the defendants may be interested, it is not multifarious. *Bugbee* v. *Sargent*, 23 Maine, 269. "A bill is not to be regarded as multifarious when it states a right to account from A & B against whom it has one remedy which it seeks to enforce, and also claims a lien against A for what is due." Story's Eq. Pl., § 284.

A bill is not multifarious when it sets up one substantial ground of relief and also another on which no relief can be had. *Varrick* v. *Smith*, 5 Paige, 137.

In the case of *Newland* v. *Rogers*, 3 Barb. C. R., 432, Chancellor WALWORTH, after stating that there did not appear to be any necessary connection between the different subject matters stated in the bill, says that, "the counsel is wrong in supposing that two distinct and independent matters or claims, by the same complainant against the same defendant, cannot properly be united in the same bill. Multifariousness in a bill is only where different matters, having no connection with each other, are joined in the bill against several defendants, having no interest in or connection with one or more of the distinct causes of action or claims for which the bill is brought, so that such defendants are put to

the unnecessary trouble and expense of answering and litigating matters stated in the bill in which they are not interested, and with which they have no connection. But a simple misjoinder of different causes of complaint, between the same parties, which cannot conveniently and properly be litigated together, is sometimes called multifariousness, although the ground of objection, in such cases, depends upon an entirely different principle, and is a mere matter of convenience in the administration of justice."

Story also says, — that " the objection of multifariousness and the circumstances under which it will be allowed to prevail, or not, is, in many cases, a matter of discretion and no general rule can be laid down on the subject.". Eq. Plead., § 284.

The Supreme Court of the United States takes the same view in *Gaines* v. *Chew*, 2 How., 619, and in *Oliver* v. *Platt*, 3 How., 411. In the latter case, the Court say, — " We are of opinion that the bill is in no just sense multifarious. It is true that it embraces the claims of both companies, but these interests are so mixed up in all these transactions that entire justice could scarcely be done, at least, not conveniently be done, without a union of the proprietors of both companies. It was well observed, by Lord COLTENHAM, in *Campbell* v. *McKay*, 1 Mylne & Craig, 603, and the same doctrine was affirmed in this Court, in *Gaines* v. *Chew*, 2 Howard, 642, that it is impracticable to lay down any rule as to what constitutes multifariousness as an abstract proposition; that each case must depend upon its own circumstances, and much must necessarily be left, where the authorities leave it, to the sound discretion of the Court."

If we apply the doctrines and principles of these authorities to the facts in this case, we fail to find sufficient foundation to the objections made, to require us to dismiss the bill on the ground of multifariousness.

The case presented in the bill is substantially one between partners, seeking for an adjustment of partnership business. It sets forth a co-partnership as existing between the com-

plainants and the deceased, represented by the defendants, from 1845 to 1862.

That such a partnership existed during that time, is distinctly averred. The bill in fact seeks for an adjustment of that partnership, and the ascertainment of the rights of the different parties during the existence of that firm. It is true that it sets forth the existence of a co-partnership between John and Nathaniel Warren for many years before 1845, and that the complainants are the heirs of John. If the bill had been framed as claiming a right as heirs alone to have an adjustment of the partnership, without showing any other connection with the co-partnership, than as heirs of their father, it might well be questioned whether such a bill should not be instituted by an administrator and not by the heirs. But the bill sets forth that the complainants, being heirs, " were admitted by Nathaniel into the partnership before stated." They then became co-partners, and not simply heirs, and came in as members of the firm, as individuals, and not in their representative capacity. They now ask that the old co-partnership matters may be examined, not on the ground that they were members of the firm before their father's death, but because they were so intimately connected with the business after his death, that it is necessary to investigate and settle these prior matters, in order to determine the rights of the parties under the firm as it existed after the complainants came in.

If they came in, assuming simply their father's place by consent or understanding with the surviving partner, and entitled to all his interest in the firm property, and liable for all its debts, then it may be that they should be held entitled or liable, as the case might be, from the settlement in 1824. In such a case, if it became necessary to institute a bill in equity to adjust the affairs of the firm, thus continued, it clearly would not be multifarious to connect the prior with the subsequent transactions and seek for an adjustment of both, where the parties are the same.

If another view is taken and these complainants are to be regarded as having been admitted as members of a new firm, and independent of the old one, but as contributing the capital belonging to their father at his death, in the firm, it would not be objectionable to ask for an examination and adjustment of the condition of that firm, in order to ascertain, among other things, what capital was.in fact put in by the new partners.   At all events, the transactions referred to in the bill are not so entirely disconnected with the main purpose of the suit, as to justify us in saying that they cannot have any bearing on the case after all the facts are developed.

The allegations in the bill in reference to the branch partnership, in which one Walker was originally a party, do not appear to us as improper, or as such distinct and independent and unconnected matters as bring them within the objection of multifariousness.   That partnership was in relation to one branch only of the business of the general firm, and was confined to that particular business.   It was well likened by the counsel for the complainants to the branches of a co-partnership, so common in mercantile transactions, existing in different cities or countries.   It is not properly a distinct and independent firm, but a wheel within a wheel, or a branch from a common trunk.

If Walker had remained as a partner, he, undoubtedly, should have been made a party.   But the bill shows that, in 1854, Walker sold out his interest, and received from the partnership his share of the profits, and fully accounted for his share of the property.   On the same day, the complainants purchased of Nathaniel Warren, the testator, his interest in the lumbering business, which was the sole business of the branch firm.   Thus that particular union was dissolved, and Walker had no further interest, and no claim is made upon him, nor any that could affect his interests.

How far the purchase by the complainants of Nathaniel Warren's interest was a full and final settlement, so far as that branch of the business is concerned, we cannot deter-

mine until the whole case is developed by the proof. All we now say is, that the bill is not objectionable for this cause on demurrer. The same remark may apply to the statute of limitations, invoked as one cause of demurrer. The bill was commenced within six years after the final dissolution of the partnership, by the death of Nathaniel Warren, in 1862.

We are not called upon to consider, on this demurrer, whether or not the statute of limitations should be applied to any part of the transactions between the parties, or whether they were in the nature of merchants' accounts, or open transactions, the investigation of which would not be precluded by the statute. These questions may well await the answers and proof. There is nothing in the bill which on its face shows that the cause of complaint is necessarily and absolutely barred by the statute of limitations.

*Demurrer overruled.*

BARROWS, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.